UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMIL GODING,

                          Petitioner,

              -v.-

MICHAEL CAPRA,

                          Respondent.

20 Civ. 6390 (KPF) (OTW)

**OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

        Pending before the Court is the September 28, 2023 Report and

Recommendation from United States Magistrate Judge Ona T. Wang (the

"Report" (Dkt. #13), attached), addressing Petitioner Emil Goding's petition for

habeas corpus relief pursuant to 28 U.S.C. § 2254 (the "Petition" (Dkt. #1)).  In

her Report, Judge Wang recommends that the Petition be denied.

        The Court has examined the Report and notes that no party has objected

within the fourteen-day period from its service, as provided by 28 U.S.C.

§ 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the

reasons set forth below, the Court finds no error in the Report and adopts it in

its entirety.

## BACKGROUND

        The relevant facts and procedural history underlying this action are set

forth in the Report, and the Court assumes familiarity with them.  Nonetheless,

those facts relevant to the instant Opinion are set forth herein, and they are

drawn from the recitation of the facts in the Report (*see* Report 2-4), as well as

from the public docket and the Petition.

On October 13, 2015, Petitioner and a co-defendant robbed a bodega in Harlem, holding up the clerk, Mr. Ashishi, at gunpoint. (Report 2). The two robbers fled the bodega after stealing cash from the register, several packs of Newport cigarettes, and Mr. Ashishi's cell phone. (*Id.*). Thereafter, Mr. Ashishi directed — and, at times, accompanied — several New York City Police Department ("NYPD") officers as they canvassed the neighborhood by car looking for the two men, each of whom had worn a hoodie that covered part of his face. (*Id.*). Ultimately, Mr. Ashishi was able to identify the two robbers, who were arrested in different locations near and shortly after the robbery had taken place, concurrently with their arrests. (*Id.* at 2-3). The police recovered a silver gun from Petitioner's co-defendant, and recovered $300 in cash and several packs of Newport cigarettes from Petitioner. (*Id.*). Police also recovered Mr. Ashishi's cell phone and a blue hoodie that Petitioner had worn during the robbery from a park near where Petitioner had been arrested. (*Id.* at 3).

After his arrest, Petitioner moved to suppress the show-up identification and the items recovered after his arrest. (Report 3 (citing Respondent's appellate brief to the Appellate Division, First Department)). The trial court denied the motion, finding that the show-up identification had not been unreasonably suggestive, in light of its temporal and geographic proximity to the robbery. (*Id.*). Petitioner was convicted after a jury trial of two counts of second-degree robbery and sentenced to concurrent terms of imprisonment of 16 years to life. (Dkt. #9 at 1).

2

On appeal, Petitioner challenged the denial of his suppression motion, arguing that the circumstances of the show-up identification were unduly suggestive and were not compelled by any exigencies.  (Dkt. #9 at 200-18 (Petitioner's appellate brief to the First Department)).  The First Department disagreed and affirmed Petitioner's conviction, finding that (i) the "showup identification was justified by its close spatial and temporal proximity to the robbery," and (ii) Petitioner's claims of undue suggestiveness had not been preserved, and would fail on the merits in any event.  *See People* v. *Goding*, 101 N.Y.S.3d 605, 605-06 (1st Dep't 2019).  Leave to appeal was then denied by the New York Court of Appeals on September 4, 2019.  *See People* v. *Goding*, 34 N.Y.3d 951 (2019).

Petitioner filed the instant Petition with this Court on August 12, 2020. (Dkt. #1).  His sole ground for habeas relief was his claim that he had been subjected to an "identification unduly suggestive, pretrial identification and testimony."  (*Id.* at 2).  Initially, the case was assigned to then-United States District Judge Alison J. Nathan.  (Notice of Case Assignment dated August 14, 2020).  By order dated August 17, 2020, Judge Nathan ordered Respondent to file an answer as well as certain documents specified in the Rules Governing Section 2254 Cases in the United States District Courts.  (Dkt. #5).  That same day, Judge Nathan issued a second order referring the case to Judge Wang for a Report and Recommendation.  (Dkt. #6).

On October 14, 2020, Respondent filed his response, as well as the record of the various proceedings in state court.  (Dkt. #9-11).  After waiting

3

several months for Petitioner's reply, Judge Wang issued an order on June 29, 2021, setting a deadline of August 13, 2021, for Petitioner to submit a reply brief.  (Dkt. #12; *see also id.* at 1 ("If Petitioner does not file a reply by then, or move the Court for an adjournment for good cause, the undersigned may issue a report & recommendation on the petition based on the submitted papers, without consideration of a reply by Petitioner.")).  Petitioner did not submit a reply.

On April 7, 2022, the case was reassigned to the undersigned.  On September 28, 2023, Judge Wang issued the Report and recommended that the Petition be denied.  (*See generally* Report).  After reviewing the factual and procedural histories of the case, Judge Wang considered certain threshold procedural issues under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), including whether Petitioner had exhausted all available state judicial remedies and whether the particular claim raised in the Petition had been preserved.  (*Id.* at 4-5).  She then set forth the relevant legal standards, which required Petitioner to establish "[i] that the trial court's evidentiary rulings were erroneous as a matter of state law, [ii] that the admission of the evidence deprived him of a fair trial, and [iii] under the AEDPA, that the First Department's affirmance of the trial court's ruling constituted an unreasonable application of the" standard set forth in *United States* v. *Agurs*, 427 U.S. 97, 112-13 (1976).  (*Id.* at 5-10).

Ultimately, Judge Wang found that Petitioner had not demonstrated any fundamental unfairness during his trial.  (Report 11-14).  To begin, she found

that the underlying facts were sufficiently exigent that the show-up procedure was not unnecessarily suggestive. (*Id.* at 12). Even had it been, Judge Wang found that "the clerk's identification of Petitioner was independently reliable and there was sufficient additional evidence of Petitioner's guilt" in the form of the items recovered from Petitioner and from the park. (*Id.* at 13-14). As Judge Wang concluded, "the trial court's determination to admit this evidence was not erroneous under state law, and even if it were, it did not deprive Petitioner of a fundamentally fair trial, nor was it an unreasonable application of clearly established federal law." (*Id.* at 14).

Judge Wang recommended that the Petition be denied and that no certificate of appealability issue. (Report 14). At the end of the Report, she advised the parties that they had fourteen days from the issuance of the Report to file written objections and, further, that "FAILURE TO FILE TIMELY OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW." (Report 15 (emphases in original) (citations omitted)). As of the date of this Order, no objections to the Report have been filed.

## DISCUSSION

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not

5

clearly erroneous.  *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted).  A magistrate judge's decision is clearly erroneous only if the district court is "'left with the definite and firm conviction that a mistake has been committed.'" *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

"A party's failure to object to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver of the party's right both to object to the report and recommendation and to obtain appellate review." *Grady* v. *Conway,* No. 11 Civ. 7277 (KPF) (FM), 2015 WL 5008463, at *3 (S.D.N.Y. Aug. 24, 2015) (citing *Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992)); *see also Graves* v. *Corr. Med. Serv.*, 667 F. App'x 18, 19 (2d Cir. 2016) (summary order) ("We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object." (quoting *United States* v. *Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997))).

Judge Wang's Report issued on September 28, 2023, and objections were due on October 12, 2023.  As neither party has submitted objections to the Report, review for clear error is appropriate.  *See Miller* v. *Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).  The Court has reviewed the Report and finds that its reasoning is sound and that it is grounded in fact and in law.  More specifically, the Court agrees with Judge Wang's ultimate conclusions that the trial court did not err in admitting the identification and the other challenged

evidence at Petitioner's trial; that Petitioner received a fundamentally fair trial; and that the admission of the challenged evidence (or the upholding of its admission by the First Department) was not an unreasonable application of clearly established federal law. *See generally Marquez* v. *Barrone*, No. 22-2855, 2024 WL 2828468, at *1 (2d Cir. June 4, 2024) (summary order) (discussing law regarding identification procedures); *Brisco* v. *Ercole*, 565 F.3d 80, 86-90 (2d Cir. 2009) (same). Having reviewed the record, the Court finds no clear error and adopts the Report in its entirety.

## CONCLUSION

The Court agrees completely with Judge Wang's well-reasoned Report and hereby adopts its reasoning by reference. Accordingly, it is ORDERED that the Petition be denied. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). Additionally, the Court finds that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith; *in forma pauperis* status is therefore denied for the purpose of any appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Opinion to Petitioner at his address of record.

SO ORDERED.

Dated:    August 13, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EMIL GODING,                                 :
                                             :
                        Petitioner,          :          No. 20-CV-6390 (KPF) (OTW)
                                             :
             -against-                       :          **REPORT AND RECOMMENDATION**
                                             :          **TO THE HON KATHERINE P. FAILLA**
MICHAEL CAPRA,                               :
                        Respondent.          :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge:**

I.    **INTRODUCTION**

        Petitioner Emil Goding ("Petitioner") brings this *habeas corpus* proceeding in

accordance with 28 U.S.C. § 2254, seeking to challenge his conviction of two counts of second-

degree robbery and his concurrent indeterminate sentences of 16 years to life as a persistent

violent felony offender. Petitioner raises one ground in his petition, stated only as

"identification unduly suggestive, pretrial identification and testimony." (Petition for Writ of

Habeas Corpus, ECF 1 at 2).[1] Respondent argues that Petitioner's claim is not cognizable on

*habeas* review, because the claim is unexhausted and procedurally defaulted, and is also

meritless. (Response, ECF 9 at 3). For the reasons below, I recommend that Petitioner's petition

be **DENIED**.

---

[1] Specifically, Petitioner asserts in support of his claim that he "was never identified by hair (dreads) that are very long, weight, height, age, facual [sic] features, tattoos, nor did I match the discription [sic] when apprehended[.] The key witness Mr. Ashishi made a claim stating he seen [sic] man in gray hoodie face the mirror. He never identified identified man in blue hoodie why because he never seen guy in blue hoodie or anything." (ECF 1 at 5).

II.    **BACKGROUND**

   A.    <u>**The Convenience Store Robbery, the Show-Up Identification, and Petitioner's**</u>
        <u>**Arrest**</u>

   On October 13, 2015, at around 4:30 a.m., Petitioner and his co-defendant entered a

bodega in upper Harlem and held up the clerk, Mr. Ashishi, at gunpoint. (State Court Record,

ECF 10 at 204). The clerk dropped a mop and his cell phone. (ECF 10 at 226). Petitioner was

wearing an unmarked blue hoodie and his co-defendant was wearing an unmarked gray hoodie.

(ECF 10 at 204, 226). Both robbers had drawn the drawstrings of the hoodies tightly around

their faces so no part of their heads or hair was visible. (ECF 10 at 204).

   Petitioner took the clerk's phone, cash from the register and several packs of Newport

cigarettes. (ECF 10 at 204, 226). After the robbers fled on foot, the clerk called the police on the

store landline, ran outside and saw the robbers running away. (ECF 10 at 205). When the police

arrived, he was outside the store, waving excitedly. *Id.* He got into the backseat of the police car

and directed the police in the direction he'd seen the robbers heading. *Id.*

   A few blocks later, the clerk saw the robbers – this time with their heads uncovered but

still wearing the hoodies – crossing the street, and identified them to the police. (ECF 10 at

205). The officers stopped the car and directed the men to stop. *Id.* The man in the gray hoodie

stopped, but Petitioner, in the blue hoodie, ran off. *Id.* The clerk positively identified the man in

the gray hoodie as one of the men who had robbed him. *Id.* The officers left the car,

apprehended the man in the gray hoodie, and recovered a silver gun. *Id.*

   The clerk and the police officers lost sight of Petitioner, but one of the officers and the

clerk drove in the direction Petitioner had run in order to continue the search. (ECF 10 at 227).

Shortly thereafter, two officers who had responded to a radio broadcast that one of the

2

robbers was running eastbound on 141st Street apprehended Petitioner. *Id.* The clerk, who had remained in the backseat of the police car, heard a transmission on the radio that a "possible suspect" had been apprehended in St. Nicholas Park, two blocks from the store. *Id.* The clerk went to the park with the officer who was driving him. *Id.* Petitioner was no longer wearing the blue hoodie. *Id.* Nonetheless, the clerk identified Petitioner as the other robber. *Id.*

After police brought Petitioner to the precinct, they searched Petitioner and recovered about $300 (including two-dollar bills marked with red and blue stripes), and four packs of Newport cigarettes. *Id.* Later that morning, police recovered a cell phone and blue hoodie from the park, near where Petitioner had been arrested. *Id.* The clerk subsequently identified the phone and marked currency as items that Petitioner had taken in the robbery. *Id.*

    **B.**   **Procedural History**

Before trial, Petitioner moved to suppress the show-up identification and the items recovered after his arrest. (ECF 10 at 228). The court denied suppression, ruling that the show-up identification was not unreasonably suggestive due to its temporal and geographic proximity to the crime. (ECF 10 at 231-32).

On direct appeal, Petitioner argued that the show-up identification at St. Nicholas Park was unduly suggestive, and that admission of the identification and testimony surrounding the identification deprived him of due process. (ECF 10 at 216). On July 2, 2019, the Appellate Division unanimously affirmed Petitioner's conviction, finding the claim unpreserved, but ruling in the alternative that "the showup identification was justified by its close spatial and temporal proximity to the robbery." *People v. Goding*, 174 A.D.3d 404, 404 (1st Dept. 2019). The Appellate Division also noted that the identification was not unduly suggestive even if Mr.

3

Ashishi heard the radio transmission, because that transmission "merely conveyed what a witness of ordinary intelligence would have expected under the circumstances," namely, that any show-up identification displays a suspect and not a person selected at random. *Id.* at 405 (quoting *People v. Williams*, 15 A.D.3d 244, 245 (1st Dept. 2005)). Leave to appeal to the Court of Appeals was denied on September 4, 2019. (ECF 10 at 250). Petitioner filed the instant *habeas* petition on August 12, 2020. (*See* ECF 1).

For the reasons below, I respectfully recommend that the petition be **DENIED**.

### III.    ANALYSIS

#### A.    Exhaustion and Procedural Bar

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not consider a petition for a writ of *habeas corpus* by a prisoner in state custody unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *see Jackson v. Conway,* 763 F.3d 115, 133 (2d Cir. 2014). To satisfy the exhaustion requirement, the petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the opportunity to correct the alleged violations of federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is fulfilled once the federal claims have been presented to "the highest court of the state." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). In New York, the petitioner must have presented each of his claims to the Appellate Division and then sought leave to appeal on the same grounds to the Court of Appeals. *See id.* at 74 (holding that "one complete round" of New York's appellate review process involves appeal to Appellate Division and then application to Court of Appeals for certificate granting leave to appeal).

Respondent argues that both "arguments" in support of Petitioner's claim that the show-up identification was unduly suggestive are "subject to procedural bars." (ECF 9-1 at 13). The *claim*, however, was raised on appeal, as were the particular arguments that: 1) Petitioner's physical characteristics did not match the description provided by the eyewitness, and 2) because Petitioner had discarded the blue hoodie, the clothing description also did not match the eyewitness's description. (*See, e.g.*, Defendant's Brief on Direct Appeal, ECF 10 at 212, "From this vantage point, the top of appellant's head and his t-shirt were prominently visible and neither matched the earlier description by complainant of the suspect . . .").

Accordingly, although the claim presented by Petitioner has been exhausted, it is likely barred from *habeas* review because the state court ruled that the claim had not been preserved.[2] *See* ECF 9-1 at 13-17. Even if the claim is not barred from *habeas* review, it may also be denied on its merits. *See infra* n.3 (discussing cause and prejudice necessary to overcome default).

**B.  The Standard of Review**

A *habeas corpus* petition is not a vehicle to relitigate every issue previously determined in state court. *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Herrera v. Collins*, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking *habeas* relief under § 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1996). The petitioner thus has the burden of

---

[2] The First Department found in the first instance that Petitioner had not preserved "any of his present arguments regarding allegedly suggestive features of the identification," but also rejected the claim on its merits. 174 A.D.3d at 404-05.

proving, by a preponderance of the evidence, that his rights have been violated. *See Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).

A federal court may grant a writ of *habeas corpus* to a state prisoner where the state court's adjudication of the petitioner's federal claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A decision is an unreasonable application of clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (defining "unreasonable application" to require more than clear error). Moreover, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Lockyer*, 538 U.S. at 75.

The standard for relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA") "is difficult to meet, because the purpose of AEDPA is to ensure that federal *habeas* relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks omitted); *accord Metrish v. Lancaster*, 569 U.S. 351, 356-59 (2013); *see Burt v. Titlow*, 571 U.S. 12, 19 (2013) ("AEDPA erects a formidable barrier to federal *habeas* relief for prisoners whose claims have been adjudicated in state court."). "'Clearly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as opposed to the dicta, of this Court's decisions.'" *White*, 572 U.S. at 419-20 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)); *accord Smith v. Artus*, 610 F. App'x 23, 26 (2d Cir. 2015) (summary order). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits." *Greene*, 565 U.S. at 38 (citing *Cullen*, 563 U.S. at 181).

As applied to state court evidentiary rulings as claimed here, a *habeas* petitioner must demonstrate that the allegedly-erroneous state court evidentiary rulings violated an identifiable constitutional right. *See, e.g.*, *Taylor v. Curry*, 708 F.2d 886, 890-91 (2d Cir. 1983) ("Erroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair trial*") (emphasis in original), *cert. denied*, 464 U.S. 1000 (1983); *see also, e.g.*, *Vega v. Portuondo*, 120 Fed. Appx. 380, 382 (2d Cir. 2005) ("Even assuming, for the sake of argument, that petitioner is correct to assert that admission of [the evidence] was erroneous as a matter of [state] law, this alone would not suffice to merit federal habeas relief. . . . The introduction of

7

unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a

violation of due process unless the evidence is so extremely unfair that its admission violates

fundamental conceptions of justice") (internal citations and quotation marks omitted). That is a

"heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if

erroneous, do not rise to the level of a constitutional violation." *Bonet v. McGinnis,* No. 98-CV-

6529, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal citations and quotation marks

omitted).

The first step in this analysis is to determine whether the state court decision violated a

state evidentiary rule, because the proper application of a presumptively constitutional state

evidentiary rule could not be unconstitutional. *See, e.g.*, *Brooks v. Artuz*, No. 97-CV-3300 (JGK),

2000 WL 1532918, at *6, 9 (S.D.N.Y. Oct. 17, 2000) (petitioner did not demonstrate an error

under state evidentiary law, "much less" an error of constitutional magnitude); *Jones v. Stinson*,

94 F. Supp. 2d 370, 391-92 (E.D.N.Y. 2000), *rev'd*, 229 F.3d 112 (2d Cir. 2000), *as amended* (Nov.

16, 2000) (once the *habeas* court has found that the state court ruling was not erroneous under

state law, there is no need to apply a constitutional analysis).[3]

---

[3] Federal courts are generally procedurally barred from considering a state court ruling "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (emphases added). Examples of such include failure to comply with a state's filing deadline. *Id.* at 743-44. A state procedural bar is "adequate" if it "is firmly established and regularly followed by the state in question" in the specific circumstances in the instant case. *See Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006). The bar is "independent" if the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-64 (1989) (internal quotation marks omitted).

If a claim is procedurally barred, a district court may not review it on the merits unless the petitioner demonstrates both cause for the default and prejudice resulting therefrom, or if he demonstrates that the failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. The "fundamental miscarriage of justice" exception is narrow, reserved for situations "where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Dretke v. Haley*, 541 U.S.

Second, the petitioner must allege that the state evidentiary error violated an identifiable constitutional right. This necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system. Here, Petitioner asserts that his due process rights and right to a fair trial were violated by the state court's evidentiary rulings allowing testimony related to the victim's out-of-court identification of him. (ECF 1 at 5).

Third, an erroneous state evidentiary ruling that is asserted to be a constitutional violation will merit *habeas* relief only "where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Rosario v. Kuhlman,* 839 F.2d 918, 925 (2d Cir. 1983) (internal quotations omitted). The test for "fundamental fairness" is whether the excluded evidence, "'evaluated in the context of the entire record,' 'create[d] a reasonable doubt [regarding petitioner's guilt] that did not otherwise exist.'" *Curry*, 708 F.2d at 891 (quoting the materiality standard defined in *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).

The "fundamental fairness" standard applies to the erroneous exclusion or admission of evidence. *See, e.g.*, *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) ("For the erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'") (quoting *Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir. 1992)); *Rodriguez v. O'Keefe,* 122 F.3d 1057 (2d Cir. 1997), *cert.*

---

386, 393 (2004). To establish cause for a default, a petitioner must adduce "some objective factor external to the defense" that explains why he did not raise the claim previously. *See Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir. 1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A showing of prejudice requires a petitioner to demonstrate that the failure to raise a claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness. *See Carrier*, 477 U.S. at 493-94. Finally, to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent." *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

*denied,* 522 U.S. 1123 (1998); *Collins v. Scully*, 755 F.2d 16, 18-19 (2d Cir. 1985); *Roldan v. Artuz,* 78 F. Supp. 2d 260, 276 (S.D.N.Y. 2000). Identification testimony should only be suppressed when "the procedures that yielded the identification are so unnecessarily suggestive as to create a substantial likelihood of misidentification." (ECF 10 at 233) (citing *Manson v. Brathwaite*, 432 U.S. 98 (1977)); *see also Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009).

The final question is how to apply AEDPA in the context of a fundamental fairness analysis, an issue addressed by the Second Circuit in *Jones v. Stinson,* 229 F.3d 112, 120-21 (2d Cir. 2000), *as amended* (Nov. 16, 2000). In *Jones,* the state appellate court decided that the trial court's evidentiary rulings had not denied the defendant a fair trial. *Id.* at 116. The Second Circuit held that although it might have found, under the *Agurs* standard, that one of the trial court's rulings "create[d] a reasonable doubt that did not otherwise exist," the Second Circuit could not conclude that the excluded testimony "would so certainly have created new ground for reasonable doubt that the appellate division's decision [affirming the trial court's ruling] was objectively unreasonable." *Id.* at 120. The Second Circuit thus denied *habeas* relief based on AEDPA's deferential review standard. *Id.* at 120-21.

In sum, for Petitioner to succeed here, he must establish (1) that the trial court's evidentiary rulings were erroneous as a matter of state law, (2) that the admission of the evidence deprived him of a fair trial, and (3) under the AEDPA, that the First Department's affirmance of the trial court's ruling constituted an unreasonable application of the *Agurs* standard.

**C.**    **Even If Not Barred From *Habeas* Review, The Show-Up Identification Was Not Unduly Suggestive And Was Independently Reliable**

Petitioner argues that his due process rights were violated when the trial court admitted testimony and evidence obtained after the clerk identified Petitioner in St. Nicholas Park, after Petitioner had already removed his hoodie, had been tased and was handcuffed.

Reliability is the touchstone for the admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). In *Raheem*, the Second Circuit stated that the reliability of eyewitness identifications proceeds in two stages:

> The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury. If the court finds, however, that the procedures were [unnecessarily] suggestive, it must then determine whether the identification was nonetheless independently reliable. In sum, the identification evidence will be admissible if (a) the procedures were not [unnecessarily] suggestive or (b) the identification has independent reliability.

*Id.* (internal citations, quotation marks and alterations omitted); *see also id.* at 134 (discussing whether evidence was "unduly" or "unnecessarily" suggestive).

Under the first step of this analysis, an identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Although a "showup" procedure is inherently suggestive because it involves the presentation of a single suspect to a witness by the police (as opposed to a lineup, in which several individuals are presented to the police, only one of whom is the suspect) and has accordingly been "widely

11

condemned," "a claimed violation of due process in the conduct of a confrontation depends on the totality of the circumstances surrounding it." *Stovall v. Denno*, 388 U.S. 293, 302 (1967). Accordingly, a show-up identification violates due process only if it is an "unnecessarily suggestive" procedure. *Id.*; *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (a showup "without more" does *not* violate due process).

Exigent circumstances generally weigh in favor of concluding that a show-up identification procedure was not unnecessarily suggestive, because a show-up procedure may be necessary in such circumstances to quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect. *See, e.g.*, *Biggers*, 409 U.S. at 197-98 (concluding that suggestive show-up identification procedure did not violate due process because sole eyewitness to crime was at risk of dying and was unable to travel from her hospital bed to police station for lineup); *United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) ("[A] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the mistaken arrest of innocent persons.") (internal quotation marks omitted). Thus, where an officer has "or should have doubts whether a detained suspect is in fact the person sought, the officer must make 'immediate reasonable efforts to confirm the suspect's identity.'" *Id.* (quoting *United States v. Valez*, 796 F.2d 24, 27 (2d Cir. 1986)). Courts have held that where identification evidence from showups is held in close temporal and geographic proximity to the crime scene it may be admitted. *See, e.g.*, *Bautista*, 23 F.3d at 730; *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972) (holding that show-up procedure was necessary to ensure "the immediate release of an innocent suspect and at the same time to enable the police to resume the search for the fleeing culprit while the trail [was] still fresh").

Even if an identification procedure is unduly suggestive, the out-of-court identification may nonetheless be admissible if other factors indicate that the identification is independently reliable. To ascertain whether an identification "has reliability independent of the unduly suggestive identification procedures," *Raheem*, 257 F.3d at 135, courts generally look to five established factors, first set forth in *Biggers*:

> (1) the opportunity of the witness to view the criminal at the time of the crime,
> (2) the witness' degree of attention,
> (3) the accuracy of the witness' prior description of the criminal,
> (4) the level of certainty demonstrated by the witness at the confrontation, and
> (5) the length of time between the crime and the confrontation.

409 U.S. 199-200; *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

None of these factors standing alone is dispositive of the existence of independent reliability; instead, reliability is assessed "in light of the totality of the circumstances." *Raheem*, 257 F.3d at 135. Here, the Appellate Division concluded that the identification was not unduly suggestive and was "justified by its close spatial and temporal proximity to the robbery." 174 A.D. 3d at 404. The *habeas* petition does not articulate how this ruling was erroneous under state law. This is sufficient basis, alone, to deny the *habeas* petition.

Even if the show-up identification was unduly suggestive and erroneously admitted, however – which it was not – the clerk's identification of Petitioner was independently reliable and there was sufficient additional evidence of Petitioner's guilt. The clerk was the victim and eyewitness to a robbery at gunpoint inside a convenience store. He called 911 immediately after the robbers left the store, described Petitioner and his co-defendant, spotted him again as

they crossed the street and pointed Petitioner out as he ran into St. Nicholas Park.[4] Minutes later, Petitioner was arrested in St. Nicholas Park with marked currency and four packs of Newport cigarettes later found on his person. Indeed, the fact that the clerk correctly identified Petitioner even without the blue hoodie indicates that he identified him by his physical characteristics. The subsequent discovery of the blue hoodie and items taken during the robbery further confirm the reliability of the identification.[5] *See Favorite v. Colvin*, No. 16-CV-7086, 2021 WL 11550351, at *3 (finding show-up identification by robbery victims shortly after robbery not unduly suggestive).

In sum, the trial court's determination to admit this evidence was not erroneous under state law, and even if it were, it did not deprive Petitioner of a fundamentally fair trial, nor was it an unreasonable application of clearly established federal law. Thus, Petitioner cannot show a violation of his constitutional rights. *See Jones v. Stinson*, 229 F.3d. 112, 119-20 (2d Cir. 2000).

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's *habeas* petition should be **DENIED**. Furthermore, because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

---

[4] During the time the officers pursued the robbers, the clerk had opportunity to observe the robbers as they left the crime scene and crossed the street with their heads exposed.

[5] That the clerk could not unequivocally point out Petitioner at trial does not undermine the reliability of his earlier identification shortly after the robbery. In reaching its verdict, the jury was entitled to weigh the show-up identification with the clerk's trial testimony, including his recounting of seeing the robbers together leaving the crime scene, together with the items recovered after Petitioner's arrest.

14

**V.     OBJECTIONS**

In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be filed with the Clerk of Court, *Pro Se* Intake Unit, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983)).

The Clerk of Court is directed to mail a copy of this Report and Recommendation to Petitioner.

Respectfully submitted,

Dated: New York, New York
          September 28, 2023

_/s/  Ona T. Wang_____
          **Ona T. Wang**
          United States Magistrate Judge